```
                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
                        FORT MYERS DIVISION
```

ARKADY RUDENKO,

      Petitioner,

v.                                    Case No. 2:25-cv-1157-JES-NPM

SECRETARY, DEPARTMENT OF
HOMELAND SECURITY, UNITED
STATES ATTORNEY GENERAL,
WARDEN, FLORIDA SOFT SIDE
SOUTH, DIRECTOR, IMMIGRATION
AND CUSTOMS ENFORCEMENT,
DIRECTOR, MIAMI FIELD
OFFICE, U.S. IMMIGRATION AND
CUSTOMS ENFORCEMENT,
DIRECTOR, INTERIM FIELD
OFFICE IN MIAMI, ICE, and
IMMIGRATION AND CUSTOMS
ENFORCEMENT (ICE),

      Respondents.
_____/

## **OPINION AND ORDER**

Before the Court are Petitioner Arkady Rudenko's petition for writ of habeas corpus (Doc. 1), the government's response (Doc. 7), and Rudenko's reply (Doc. 9). For the below reasons, the Court grants the petition to the extent set forth in this Order.

### **I. Background**

Petitioner Arkady Rudenko was born on February 16, 1967 in the city of Odessa, which was then part of the Soviet Union. (Doc. 1 at 7). Odessa is now part of present-day Ukraine. (Id.) Petitioner, along with his mother and stepfather, were paroled

into the United States as refugees on October 22, 1979 and forfeited their Soviet Union citizenship. (Id.) Petitioner's status was adjusted to lawful permanent resident on July 7, 1983. (Id.) Petitioner's country of nationality is listed as "stateless" on his Memorandum of Creation of Record of Lawful Permanent Residence." (Id.)

On June 20, 2011, Petitioner was convicted of felony attempted cocaine trafficking and felony harassment of a witness, victim, or informant. (Doc. 7 at 2). He was subsequently placed in removal proceedings before the immigration court. (Doc. 1 at 7). Petitioner was ordered removed from the United States to Ukraine/Russia on October 3, 2011. (Id. at 7). On or about February 1, 2012, Petitioner formally requested release from custody after having been detained about 120 days after the entry of a final order of removal. (Id. at 8). In the request, Petitioner noted that Ukraine had denied the issuance of a travel document, and that Russia would deny the issuance of a travel document but required an in-person interview before issuing a formal denial. (Id.)

On some unspecified date in 2012, the government released Petitioner from custody and placed him on an Order of Supervision. (Doc. 1 at 8.) Petitioner has a work permit, routinely checks in with Immigration and customs Enforcement (ICE), and has never

violated the terms of his supervision order. (Id.) On November 3, 2025, ICE detained Petitioner at his home. (Id. at 9).

On November 4, 2025, ICE gave Petitioner a notice of revocation of release. The document stated that "based on a review of his official alien file and/or a personal interview on account of changed circumstances ICE determined a significant likelihood of removal in the reasonably foreseeable future." (Doc. 1 at 9). The notice cites both 8 C.F.R. § 241.4 and 241.13. (Id.) The notice also informed Petitioner that he would "promptly be afforded an informal interview." (Id.) At the time he filed his petition, Petitioner had not had any interview with ICE officer. (Id.) Nor had Petitioner received any information that the governments of Ukraine or Russia had found Petitioner eligible for a travel document. (Id.)

## II. Discussion

### A. The Court has jurisdiction to consider Rudenko's claims.

Respondents first argue that the Court lacks jurisdiction to consider this petition. (Doc. 7 at 4). They point to a provision that bars courts from hearing certain claims that states:

> Except as provided in this section and notwithstanding any other provisions of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to

> commence proceedings, adjudicate cases, or
> execute removal orders against any alien under
> this chapter.

8 U.S.C. § 1252(g). But this jurisdictional bar is narrow. "The provision applies only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 482 (1999); see also Jennings v. Rodriguez, 583 U.S. 281, 294 (2018) ("We did not interpret this language to sweep in any claim that technically can be said to 'arise from' the three listed actions of the Attorney General. Instead, we read the language to refer to just those three specific actions themselves."). "When asking if a claim is barred by § 1252(g), courts must focus on the action being challenged." Canal A Media Holding, LLC v. United States Citizenship and Immigration Servs., 964 F.3d 1250, 1258 (11th Cir. 2020).

Respondents also raise the INA's "zipper clause," which states:

> Judicial review of all questions of law and
> fact, including interpretation and
> application of constitutional and statutory
> provisions, arising from any action taken or
> proceeding brought to remove an alien from the
> United States under this subchapter shall be
> available only in judicial review of a final
> order under this section. Except as otherwise
> provided in this section, no court should have
> jurisdiction, by habeas corpus under section
> 2241 or title 28 or any other habeas corpus

4

> provision, by section 1361 or 1651 of such title, or by any other provision of law (statutory or nonstatutory), to review such an order or such question of law or fact.

8 U.S.C. § 1252(b)(9). But the zipper clause only applies to claims requesting review of a removal order. See Madu v. U.S. Attorney Gen., 470 F.3d 1362, 1365 (11th Cir. 2006) (holding the INA did not divest the district court of jurisdiction over a § 2241 challenge to detention of the petitioner pending deportation).

Rudenko does not challenge the commencement of a proceeding, the adjudication of a case, or the execution of his removal order. Nor does he ask the Court to review the removal order. Rather, he challenges the legality and length of his detention based on procedural deficiencies and under a framework devised by the Supreme Court for district courts to apply. See Zadvydas, 533 U.S. at 682 (stating the Court's limitation on post-removal detention "is subject to federal-court review."). A decision in Rudenko's favor would not impair ICE's ability to execute the removal order. The INA does not strip the Court of jurisdiction over this action.

**B. Rudenko's continued detention violates the Supreme Court's framework in <u>Zadvydas v. Davis</u>.**

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313

5

(11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. Id. Detention may continue after the removal period, but not indefinitely.

In Zadvydas, the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701. So, "for the sake of uniform administration in the federal courts," it established a "presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id. Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention. If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise. Id.

Respondents argue that Rudenko's petition is premature because—although he has been detained longer than 180 days in

aggregate since his final order of removal—his latest (current) detention has not yet exceeded 180 days. (Doc. 7 at 7). They note that Rudenko was detained for a second time on November 3, 2025, and he filed this petition only 60 days later. (Id. at 9). In short, they assume that the six-month presumptively reasonable period of detention resets each time a noncitizen is detained. That assumption is inconsistent with Zadvydas because it would effectively allow ICE to detain noncitizens indefinitely and avoid judicial scrutiny by simply releasing and re-detaining them every 180 days. The Zadvydas framework explicitly guards against indefinite detention. 533 U.S. at 682 ("Based on our conclusion that indefinite detention of aliens . . . would raise serious constitutional concerns, we construe the statute to contain an implicit 'reasonable time' limitation").

In 2011 and 2012, Rudenko was detained for more than 120 days before he was released because removal was not significantly likely in the reasonably foreseeable future. (Doc. 1 at 8.) Now, more than 90 additional days have passed since his re-detention. Because the six-month period for presumptively reasonable detention has expired, Zadvydas's burden-shifting framework applies.

Rudenko has carried his initial burden by showing good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. ICE made that determination when

it released him in 2012, and it has been unable to remove Rudenko in the fourteen intervening years or in the 90 days since his latest detention. Respondents make no real attempt at rebuttal. They assert that "ICE is working toward removal [in] 'the reasonably foreseeable future.'" (Doc. 7 at 16). They also state that "ICE now believes it can obtain travel documents in the reasonably foreseeable future." (Id.) They do not, however, allege that any country has actually agreed to accept Rudenko or that Ukraine or Russia routinely accept former Soviet Union citizens from the United States.[1] Nor do they allege that U.S. officials have contacted Russia or Ukraine about accepting Rudenko specifically. Under, Zadvydas this is insufficient to show a realistic likelihood of removal.

### III. Conclusion

The Court finds no significant likelihood that Rudenko will be removed in the reasonably foreseeable future. He is entitled to release from detention under Zadvydas, but he remains subject

---

[1] See 8 C.F.R. 241.13(f) ("Factors for consideration [as to whether there is a significant likelihood of removing a detained alien]. The HQPDU shall consider all the facts of the case including, but not limited to, the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.").

to the terms of the order of supervision.  If Rudenko fails to comply with the conditions of release, he may be subject to criminal penalties—including further detention.  See 8 U.S.C. § 1253(b); Zadvydas, 533 U.S. at 695("[W]e nowhere deny the right of Congress ... to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Rudenko to "assur[e] [his] presence at the moment of removal."  Zadvydas, 533 U.S. at 680.

Accordingly, it is hereby

**ORDERED**:

1. Arkady Rudenko's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED.**

2. Respondents shall release Rudenko within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by notifying his counsel when and where he can be collected.

3. The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on February 4, 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE